UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

McKENZIE MORROW,  )
  )
          Plaintiff,  )
  )
vs.  )   08 C 7008
  )
EDWARD J. MAY, EDWARD J. CARROLL,  )
SHAWN J. PICKETT, BRIAN P. TOWN,  )
and CITY OF CHICAGO,  )
  )
          Defendants.  )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the court on the motion of Defendants the City of Chicago and Chicago Police Officers Edward J. May ("May"), Edward J. Carroll ("Carroll"), Shawn J. Pickett ("Pickett"), and Brian P. Town ("Town") for summary judgment. For the reasons stated below, Defendants' motion is denied.

## BACKGROUND

Plaintiff McKenzie Morrow ("Morrow") was arrested on November 7, 2007, near 1148 N. Ridgeway Avenue in Chicago and charged with possession of less than 15 grams of cocaine. Though the parties do not dispute that this arrest occurred, they agree on little else. Accordingly, our description of the relevant facts that are supported by

admissible evidence in the record will note the existence of disputes and present each side's account of the events at issue.

The parties present competing accounts of Morrow's activities during the period immediately preceding his arrest. On the day in question, Defendants May, Town, Carroll, and Pickett (collectively, "Defendant Officers") were patrolling an area of Chicago in which a number of citizen complaints had been registered. At approximately 6:30 p.m. the Defendant Officers were in an unmarked police vehicle proceeding westbound on Augusta Boulevard with May at the wheel. As the vehicle approached the intersection of Augusta and Hamlin Avenue, a female citizen gestured for it to stop. The woman stated that a group of males including an individual wearing a white jacket were selling "rocks" (street terminology for crack cocaine) by a vacant lot at Division Street and Ridgeway Avenue. After the conversation with the woman ended, Officer May made a U-turn to travel eastbound on Augusta and then turned north on Ridgeway.

As the Defendant Officers drove north on Ridgeway, they observed four people, including Morrow, standing by a vacant lot by the alley at Ridgeway just south of Division. May testified that Morrow was wearing a white jacket and stood about three feet away from the other three individuals in the lot. After observing Morrow, May continued northward on Ridgeway to Division street and stopped the vehicle at Division and Lawndale. May then exited the car to walk back to a spot near 1148 North

Ridgeway to conduct surveillance. Carroll, Pickett, and Town remained in the vehicle where they were to remain until May contacted them.

Officer May began surveillance of Morrow and the other three individuals from behind some abandoned cars in a different vacant lot approximately 125 feet away from Morrow. He testified that the vacant lot afforded him an unobstructed view of the individuals and that his observation was further aided by nearby artificial lighting. Once in position, he radioed the other officers and told them that "he's [the drug dealer] working" and further notified them that he would call when the need arose. Over the course of his 20-minute long surveillance, May observed three different individuals approach Morrow and the other persons with him. The interactions all proceeded in a similar fashion. Each individual engaged in conversation with a juvenile in Morrow's coterie. After the conversation ended, the juvenile turned to Morrow who then walked to a location twenty-five feet into the vacant lot. Morrow picked up a brown vial, removed something from the vial, and brought the item to the individual who would give United States Currency to the juvenile. May also heard the other two men and the juvenile standing near Morrow yell "rocks, park" at various times while he observed the group.

Morrow challenges many aspects of Defendants' account. He categorically denies that he engaged in any drug sales on November 7, 2007, and provides an alternative

explanation for his presence at the vacant lot at the time of his arrest. Specifically, Morrow testified that he went to the 1100 block of North Ridgeway in order to purchase a "square", which is a slang term for a loose cigarette, from a person who lived on that block. As Morrow approached the house where he bought the cigarette, he saw three individuals he did not know standing in the vacant lot just north of the house; he did not see what they were doing and did not speak with them. He further stated that he never entered the abandoned lot where the alleged drug sales took place, never handled cocaine, and never heard anyone yell something to the effect of "rocks" to anyone. Additionally, Morrow testified that he was wearing a sweater at the time of his arrest and did not own or have possession of a white sweater or jacket. Morrow also disputes May's ability to conduct surveillance in the vacant lot across the street from the location where he was arrested; he presented evidence that such surveillance would have been impossible at the time of his arrest because the supposed vantage point was fenced in with a black iron fence and there were no abandoned cars at the location to give him cover.

Morrow and Defendants also offer divergent accounts of Morrow's arrest. According to Defendants, after the third suspected drug transaction concluded, May called for his partners over the radio to, "come and get them." Officers Carroll, Pickett, and Town then pulled up to the location in their vehicle and arrested Morrow and the

other individuals with him; Town placed handcuffs on the four arrestees and performed protective pat-downs for weapons. After the arrestees were handcuffed, May left his place of concealment and walked into the vacant lot near the site of arrest and retrieved the brown vial. May testified that he opened the vial and personally observed five clear plastic packets containing a white rocky substance. May later gave Carroll the vial containing the suspect narcotics which Carroll inventoried and submitted to the Illinois State Police Division of Forensic Services; the substances tested positive for cocaine on November 16, 2007.

Morrow testified to a different sequence of events. Morrow stated that he was not with the other arrestees at the time of his arrest but was instead standing twenty-five feet away from them. He also testified that May did not arrive separately from the other three officers but, rather, all four officers jumped out of the unmarked police car just prior to Morrow's arrest.

The final dispute between the parties concerns what occurred after Morrow arrived at the police station. Morrow testified that after he arrived at the police station, Officers Carroll and Pickett unbuckled his pants and searched the trimming of his clothing. The two officers then instructed Morrow to pull his pants and underwear down, bend over, and cough in order for the officers to look into his buttocks. Morrow stated that during the search one officer was in front of him and one was in a doorway

about two to five feet away from him. Carroll and Pickett deny that such a search occurred.

On December 6, 2007, a hearing was held in Morrow's case at the Cook County Courthouse located at Flournoy and Kedzie. As the complaining witness, Officer May received notice to testify against Morrow at the December 6 hearing. May was unable to attend the proceeding because he had two trials at a different courthouse that same day. At the beginning of the hearing, the Assistant State's Attorney notified the judge that the complaining officer could not attend the hearing and requested a continuance; the judge denied the prosecutor's motion. The state filed a motion to dismiss the suit *nolle prosequi* which the court granted.

On December 8, 2008, Morrow filed suit against Defendants asserting claims of illegal stop, illegal search, false arrest, and conspiracy under 42 U.S.C. § 1983 as well as an additional claim of malicious prosecution under Illinois law. Morrow amended his complaint on January 13, 2010, to include an additional illegal strip search claim. Defendants now move for summary judgment on all of Morrow's claims.

**LEGAL STANDARD**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of

law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With these principles in mind, we turn to Defendants' motion.

## DISCUSSION

Defendants contend they are entitled to summary judgment on Counts I-V of Morrow's Complaint because the Defendant Officers possessed probable cause to stop, search, and arrest Morrow. They argue that probable cause for the stop, search, and arrest could be based on the female citizen's statement of a person matching Morrow's description selling crack cocaine nearby and Officer May's observation of Morrow's involvement in three suspected narcotics transactions.

In making this argument, Defendants offer a number of reasons why we should ignore those portions of Morrow's declaration that directly contradict the facts supporting probable cause. They contend that the entire declaration should be stricken because Morrow identified Officer Town as the officer that placed him in handcuffs in his declaration but had previously stated in his deposition that he could not remember who had done so. As a general matter, a court may disregard a statement in an affidavit that contradicts previous deposition testimony. *Ineichen v. Ameritech*, 410 F.3d 956, 963 (7th Cir. 2005). However, a court may accept a contradictory statement in a declaration if the party offers a suitable explanation for the discrepancy such as "confusion, mistake, or lapse of memory[.]" *Commercial Underwriters Ins. Co. v. Aires Envtl. Servs.*, 259 F.3d 792, 799 (7th Cir. 2001). In this instance, Morrow cites a lapse of memory during his deposition as sufficient justification for the change; we agree and choose to accept his declaration. Additionally, Defendants ask us to disregard Morrow's declaration because it consists of self-serving statements that are not independently corroborated. A non-moving party's declaration may constitute affirmative evidence sufficient to defeat summary judgment regardless of whether the statements made are self-serving or uncorroborated. *See Payne v. Pauley*, 337 F.3d 767, 770-72 (7th Cir. 2003). Accordingly, we choose to take Morrow's declaration into account when deciding whether summary judgment is appropriate.

Even considering Morrow's declaration, Defendants nevertheless contend that they are entitled to summary judgment because Morrow has not presented any facts to contradict May's account of his surreptitious observations of the Plaintiff on the date in question. In his sworn statement, Morrow asserts that he did not engage in any drug transactions the day of his arrest, that he was not wearing a white jacket, and challenges May's ability to conduct surveillance from the location he described in his deposition. These statements are sufficient to create a genuine issue of material fact with respect to the probable cause question. Viewing the evidence in the light most favorable to Morrow, a reasonable juror could conclude that May either mistakenly identified Morrow as the object of his observations or did not conduct surveillance at all. We therefore decline to award summary judgment on Counts I-V on this basis.

Defendants also argue that they are entitled to summary judgment on Count IV because no genuine issues of material fact exist with regard to whether a strip search occurred. In his deposition, Morrow testified that sometime after his arrival at the station house, Officers Carroll and Pickett subjected him to a strip search with one officer "standing in front of [him]" and the other stood in the door way 3 to 5 feet away.[1] In response, Defendants categorically deny that any such search occurred while

---

[1] Defendants assert that Morrow's description of the alleged strip search is inconsistent because he testified that both officers were in front of him while the alleged search occurred and, therefore, were unable to look into Morrow's buttocks. We do not

at the station. In short, the dispute over whether the strip search occurred amounts to a swearing contest between the parties that precludes the award of summary judgment. *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 933 (7th Cir. 1997). We find that Defendants are not entitled to summary judgment on Count IV.

Defendants further contend that we should grant summary judgment on Morrow's claim of conspiracy under 42 U.S.C. § 1983 because Morrow has failed to present sufficient evidence of an agreement between the Defendant Officers to violate his constitutional rights. Morrow responds that their circumstantial evidence of an agreement among the Defendant Officers is sufficient to survive summary judgment. "Circumstantial evidence may provide adequate proof of conspiracy." *Hoffman-La Roche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir. 1971). In this instance, Morrow has presented evidence of Defendant Officers' opportunity to form an agreement by nature of their collaboration with each other as well as each Officer's involvement in Morrow's stop, search, arrest, and the institution of a criminal complaint. Under the circumstances, we find that such non-direct evidence of an agreement among the

---

see why Morrow's testimony must be construed in this way. Morrow testified that one officer stood in front of him while another stood in the doorway; the testimony does not give any conclusive indication that the officer in the doorway also stood in front of Morrow. In the absence of such an indication, we decline to accept Defendants' construction of Morrow's testimony.

Defendant Officers is sufficient to preclude the award of summary judgment on Morrow's conspiracy claim.

Finally, Defendants argue that Morrow's malicious prosecution claim cannot survive summary judgment because no disputed issues of fact exist as to whether Morrow's criminal prosecution terminated in a manner indicative of his innocence. To establish a malicious prosecution claim under Illinois law, a plaintiff must demonstrate "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Joiner v. Benton Comm. Bank*, 411 N.E.2d 229, 232 (Ill. 1980). A malicious prosecution action cannot proceed unless the underlying criminal proceedings were terminated in a manner indicative of the innocence of the accused. *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). As a general matter, termination of a criminal case via a *nolle prosequi* motion may be characterized as suggesting the innocence of the plaintiff in a malicious prosecution action. *Id*. at 1242-43. However, the abandonment of the proceedings does not indicate the innocence of the accused "when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new

criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Id*. at 1243.

In this instance, Defendants suggest that the transcript of the proceedings in which the Cook County Assistant State's Attorney dismissed Morrow's criminal case clearly shows that the prosecution ended because of the impossibility of bringing Morrow to trial. We do not think the brief transcript conclusively demonstrates the reasoning behind the Assistant State's Attorney's decision to file a motion to dismiss *nolle prosequi*. As a consequence, we find that material issues of fact exist as to whether Morrow's criminal case was abandoned in a manner that indicated his innocence. We therefore deny Defendants' motion for summary judgment on the malicious prosecution issue.

## CONCLUSION

Defendants' motion for summary judgment is denied.

*Charles P. Kocoras*
Charles P. Kocoras
United States District Judge

Dated:   October 13, 2010